UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

MICHAEL GERDES,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

NO: 1:16-CV-3136-RMP

ORDER GRANTING DEFENDANT'S AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT are cross-motions for summary judgment from Plaintiff Michael Gerdes, **ECF No. 12**, and the Commissioner of Social Security (the "Commissioner"), **ECF No. 14**. Mr. Gerdes sought judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's denial of his claims for disability insurance benefits under Title II of the Social Security Act (the "Act") and supplemental security income under Title XVI of the Act. The Court has reviewed the motions, Plaintiff's reply memorandum, the administrative record, and is fully informed. The motions were heard without oral argument. For the reasons stated below, the Commissioner's motion is granted, and Mr. Gerdes' motion is denied.

ORDER GRANTING DEFENDANT'S AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT~ 1

## BACKGROUND

### A. Mr. Gerdes' Claim for Benefits and Procedural History

Mr. Gerdes applied for disability insurance benefits on December 27, 2012. Administrative Record ("AR") 224-29.[1] Plaintiff also protectively sought supplemental security income through an application filed the same date. AR 230-38. Plaintiff was 27 years old at the time he applied for benefits. AR 250. Plaintiff listed the following conditions that limited his ability to work at the time, with a claimed onset date of March 5, 2010, when Mr. Gerdes was 24 years old: clinical depression, neck problems, and back problems. AR 253. Mr. Gerdes' claimed onset date coincided with when he stopped working; as stated by Plaintiff on appeal, Plaintiff's "work history is significant for manual labor, including as a muffler installer, door assembler, laborer/salvager, and caster." ECF No. 12 at 2; AR 254-55. It is undisputed in the record that Mr. Gerdes had "insured status" until September 30, 2015, meaning that his claimed disability must have begun before that date for him to receive the Social Security benefits he seeks.

### B. November 12, 2014 Hearing

Mr. Gerdes was represented by attorney Robert Tree at his hearing before administrative law judge ("ALJ") Kimberly Boyce on November 12, 2014.[2] AR

---

[1] The AR is filed at ECF No. 9.

[2] Mr. Gerdes is represented by D. James Tree on appeal.

42. The ALJ hosted the hearing from Seattle, Washington, with Mr. Gerdes, his counsel, and vocational expert Kimberly Mullinax participating from Yakima, Washington. *Id.*

Mr. Gerdes lives with his parents and niece. He testified that he first sought treatment from a chiropractor in 2008 for persistent hiccups, which the chiropractor diagnosed as being related to a neck problem. Mr. Gerdes further recalled that his neck and back problems were "pretty bad" by the time he quit his job as an assembler and laborer in March 2010. Mr. Gerdes described unsuccessfully looking for full-time work that would accommodate his neck and back problems while receiving unemployment benefits until 2012.

Mr. Gerdes testified that he helps out around his parents' house and helps care for their horses in the morning and evening. He also described his days all being pretty much the same in terms of his back pain requiring him to lie down several times and to go to the chiropractor in the morning and later in the evening of each day. AR 76. Vocational expert Ms. Mullinax also was examined by the ALJ and Mr. Gerdes' attorney and testified regarding the light and sedentary work that someone could perform, with the functional limitations extrapolated by the ALJ from Mr. Gerdes' claim of back and neck pain and depression and social anxiety.

## C. ALJ's Decision

The ALJ issued her decision finding Mr. Gerdes not disabled on December 19, 2014. The ALJ undertook the five-step disability evaluation process, outlined below, and the Court summarizes the ALJ's findings as follows, from AR 20-32:

**Step one:** Mr. Gerdes has not engaged in substantial gainful activity since his alleged onset date of March 5, 2010.

**Step two:** Mr. Gerdes has the following severe impairments: spinal disorder, depressive disorder, and social anxiety disorder. With respect to Plaintiff's alleged neck and back pain, the ALJ found that the only imaging study in the record was conducted by Plaintiff's treating chiropractor in October 2008, and Plaintiff exclusively received chiropractic therapy for his neck and back pain. However, the ALJ continued, a chiropractor is not an acceptable medical source under Social Security regulations, citing 20 C.F.R. § 404.1513(a) and 416.913(a), and, therefore, cannot be the source upon which to base a conclusion that a claimant has a medically determinable impairment. AR 23. The ALJ found that the consultative examiner, Dr. Mary Pellicer, primarily recited Plaintiff's self-reported pain symptoms rather than reaching a diagnosis. However, the ALJ found that "Dr. Pellicer's examination did yield some objective findings, such as positive straight leg raising and range of motion limitations." AR 23. As a result, the ALJ reasoned that ". . . despite the absence of a definitive diagnosis

explaining the etiology of his neck and back pain, I conclude that the claimant's spine disorder causes more than minimal functional limitations and is a severe impairment." AR 23.

**Step three:** Mr. Gerdes does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

**Residual Functional Capacity ("RFC"):** The ALJ found that Mr. Gerdes had the RFC to

> perform light work as defined in 20 CF 404.1567(b) and 416.967(b) with some additional limitations. The claimant can work in proximity to coworkers, but not in a team or cooperative effort. The claimant can perform work that does not require interaction with the general public as an essential element of the job, but occasional incidental contact with the general public is not precluded.[3]

AR 26.

---

[3] "Light work" is defined in 20 C.F.R. § 404.1567(b) and 20 C.F.R. § 416.967(b) as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

ORDER GRANTING DEFENDANT'S AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT~ 5

**Step four:** Mr. Gerdes is able to perform past relevant work as a caster because that work does not involve activities precluded by the claimant's residual functional capacity.

**Step five:** Mr. Gerdes was not disabled for purposes of the Social Security Act from March 5, 2010, through the date of the ALJ's decision.

## APPLICABLE LEGAL STANDARDS

### A. Standard of Review

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A court may set aside the Commissioner's denial of benefits only if the ALJ's determination was based on legal error or not supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) (citing 42 U.S.C. § 405(g)). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *McCallister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir.

1965). On review, the court considers the record as a whole, not just the evidence supporting the decisions of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not the reviewing court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making a decision. *Brawner v. Sec'y of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or no disability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

**B. Definition of Disability**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if his impairments are of such severity

that Plaintiff is not only unable to do his previous work but cannot, considering Plaintiff's age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

**C. Sequential Process**

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 416.920. Step one determines if he is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *see also* 20

C.F.R. § 404, Subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he has performed in the past. If the plaintiff is able to perform his previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's RFC assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his residual functional capacity and age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy"

which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**D. Treating Physician Rule**

The treating physician rule requires that an ALJ give the medical opinion of a claimant's treating physician controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence. 20 C.F.R. § 404.1527(c)(2). Although the Commissioner has eliminated the treating physician rule for claims filed on or after March 27, 2017, 82 Fed. Reg. 5852-53, the rule applies to Mr. Gerdes' claim filed on December 19, 2012. AR 190-92.

With respect to claims filed before March 27, 2017, the Ninth Circuit weighs medical opinion evidence according to the following hierarchy:

> Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). As a general rule, more weight should be given to the opinions of a treating source than to the opinion of doctors who do not treat the claimant.

*Lester v. Chater*, 81 F.3d 821 821, 830 (9th Cir. 1995).

The Commissioner may decline to give the claimant's treating physician controlling weight, only for "clear and convincing reasons" if the treating physician's opinion is not contradicted by another doctor, or for "specific and legitimate reasons" supported by substantial evidence in the record, where the treating physician's opinion is contradicted by another doctor. *Lester*, 81 F.3d at

831. In addition, "the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (citation and alteration omitted).

## ISSUES ON APPEAL

**A.     Whether the ALJ erred in weighing the medical opinion evidence**

**B.     Whether the ALJ erred in only partially crediting Plaintiff's symptom testimony based on an adverse credibility finding**

## DISCUSSION

**A. Whether the ALJ erred in weighing the medical opinion evidence**

### a. *Mary Pellicer, MD*

Dr. Pellicer evaluated Plaintiff regarding his back and neck symptoms and conducted range of motion testing related to his benefits applications.

Plaintiff argues that the ALJ did not provide any reasoning for disregarding the qualifications that Dr. Pellicer added with respect to finding Plaintiff capable of performing light work. Namely, Dr. Pellicer opined that Plaintiff could stand, walk, and sit for approximately six hours in an eight-hour work day with "more frequent breaks due to chronic back and neck pain." AR 364-65.

The Commissioner argues that the portion of Dr. Pellicer's opinion to which the ALJ did not accord much weight was contradicted by her own treatment notes.

The ALJ gave "some weight" to Dr. Pellicer's evaluation report. AR 29. Specifically, the ALJ reasoned that Dr. Pellicer's opinion that Mr. Gerdes is capable of many of the demands of light work was supported by the restricted range of motion that Dr. Pellicer measured in Mr. Gerdes' back and neck. *See* AR 29-30. However, the ALJ rejected those of Dr. Pellicer's opinions that were not supported by objective medical evidence or testing, such as the limitations that Dr. Pellicer found as to lifting more than ten pounds, bending, squatting, crawling, kneeling, and climbing. Inadequate support by clinical findings is a specific and legitimate reason to partially disregard an evaluating physician's opinion. *See Bray*, 554 F.3d at 1228.

### b. *Michelle Zipperman, MD*

Dr. Zipperman conducted a mental health evaluation of Plaintiff for purposes of his benefits applications.

Plaintiff argues that the ALJ "cherry-picked" from Dr. Zipperman's opinion and "discarded the portions of her opinion which would have led to a conclusion of disability." ECF No. 12 at 10. Plaintiff further argues that the ALJ circularly reasoned that Dr. Zipperman's opinions did not warrant significant weight because they were based on Mr. Gerdes' self-reported symptoms rather than her clinical findings while the ALJ rejected Mr. Gerdes' mental health testimony due to the findings of Dr. Zipperman's exam.

The Commissioner responds that the ALJ was justified in declining to adopt Dr. Zipperman's conclusion that Plaintiff had "limited to fair" limitations of his ability to maintain regular attendance at work, complete normal workdays and weeks without interruption from his symptoms, and deal with usual workplace stress because those conclusions were not supported by Dr. Zipperman's findings.

The Court agrees with Plaintiff that the mere fact that Dr. Zipperman's findings are based in large part on Mr. Gerdes' self-reported symptoms is not a legitimate basis upon which to reject her opinions, as relying on a patient's reports is common and necessary in mental health practice. *See Ferrando v. Comm'r*, 449 Fed. Appx. 610, 2011 WL 3893801, 2 n.2 (9th Cir. 2011) ("[M]ental health professionals frequently rely on the combination of their observations and the patient's reports of symptoms (as do all doctors) . . . . To allow an ALJ to discredit a mental health professional's opinion solely because it is based to a significant degree on a patient's 'subjective allegations' is to allow an end-run around our rules for evaluating medical opinions for the entire category of psychological disorders.").

However, an ALJ need not give great weight to a physician's opinion as to the ultimate question of capacity to work. *See McCleod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011); 20 C.F.R. § 404.1527(d). That determination is within the province of the ALJ. *Id.* The ALJ accorded Dr. Zipperman's assessment of Plaintiff's mental health conditions significant weight. AR 29. The ALJ did not

err in failing to adopt Dr. Zipperman's opinions as to the effect of the impairments she identified on Mr. Gerdes' ability to maintain employment.

### c. *Rick Morse, DC*

Dr. Morse is a chiropractor who treated Plaintiff in 2008 and then again in April and May 2014. AR 493-94. The ALJ gave "very little weight" to the May 2014 opinion of Dr. Morse that Mr. Gerdes' symptoms, and the functional limitations that they caused, would result in Mr. Gerdes missing four or more work days per month. AR 30, 494. Dr. Morse further opined that the functional limitations existed "since at least" July 2008. AR 494.

Plaintiff argues that the ALJ should have given Dr. Morse's greater weight because he treated Mr. Gerdes, and the ALJ "failed to specify which activities exceeded Dr. Morse's opinion." ECF No. 12 at 10. The Commissioner counters that the ALJ provided germane reasons for according Dr. Morse's opinion little weight.

For claims filed before March 27, 2017, such as Mr. Gerdes' claim, Social Security regulations categorize chiropractors as "other sources who are not acceptable medical sources." 20 C.F.R. § 404.1513(d) (version in effect prior to Jan. 18, 2017) (since amended and subsection omitted). Opinions from these sources may not be used as evidence of an impairment. *Id*. However, a claimant may submit information from a chiropractor or other unacceptable medical source to help the ALJ determine the severity of the impairment and "understand how [the

ORDER GRANTING DEFENDANT'S AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT~ 14

claimant's] impairment affects [the claimant's] ability to work." 20 C.F.R. §§ 404.1513(e) (version in effect prior to Jan. 18, 2017) (since amended and subsection omitted).

The ALJ reasoned that Dr. Morse's conclusions about the amount of work that Mr. Gerdes would miss were contradicted by the fact that Mr. Gerdes had continued to work in medium and heavy exertion jobs for approximately two years past July 2008. AR 30. The ALJ's reasoning indicates that she fully considered Dr. Morse's opinion and rejected it because it conflicted with other evidence in the record that the ALJ found more persuasive. *See Regennitter v. Comm'r*, 166 F.3d 1294, 1298 (9th Cir. 1999) (an ALJ may reject lay witness testimony only by giving specific reasons germane to the witness).

### B. Whether the ALJ erred in only partially crediting Plaintiff's symptom testimony based on an adverse credibility finding

Mr. Gerdes argues that the ALJ did not adequately explain why Mr. Gerdes' activities of daily living contradicted Mr. Gerdes' testimony regarding his limitations and did not explain how the activities are transferable to work settings. Plaintiff also argues that the ALJ erroneously found that Mr. Gerdes was not pursuing treatment for his ailments and erroneously inferred from that finding that Mr. Gerdes was not fully credible because of a failure to pursue treatment. In addition, Mr. Gerdes argues that Mr. Gerdes' failed attempt to return to work while

he was receiving unemployment benefits between 2011 and 2012 supports his disability claim, rather than undermining his credibility. *See* ECF No. 15 at 4-5.

The Commissioner responds that the ALJ gave specific, clear, and convincing reasons for finding Plaintiff only partially credible: "(1) his allegations were inconsistent with the record; (2) his medication helped treat his symptoms; (3) his allegations were inconsistent with his activities of daily living; and (4) receipt of unemployment benefits." ECF No. 14 at 9.

If the evidence in the administrative record is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for the ALJ's. *Key v. Heckler* 754 F.2d 1545, 1549 (9th Cir. 1985). Moreover, a credibility determination is appropriately in the province of the ALJ, and it is not the reviewing court's role to disturb that determination unless it appears that the ALJ arbitrarily discredited the claimant's testimony. *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). Among the factors that an ALJ may consider when determining credibility are the claimant's daily activities, inadequately explained failure to follow a prescribed course of treatment, and testimony from the claimant that appears less than candid. *See id*.

Mr. Gerdes could not recall which jobs he applied to during the period he was receiving unemployment, but he recalled informing potential employers that he had "neck and back troubles," required "constant breaks," and "can't sit for too long or stand for too long." AR 65. Mr. Gerdes also testified that while he was

ORDER GRANTING DEFENDANT'S AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT~ 16

receiving full-time unemployment benefits, he represented to the State of Washington that he was able and ready to work. AR 61, 64.

The Ninth Circuit has concluded that holding oneself out as available for full-time work while receiving unemployment benefits is inconsistent with disability allegations. *See Copeland v. Bowen*, 861 F.2d 536 (9th Cir. 1988); *Carmickle v. Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008). For that reason alone, the ALJ rationally interpreted evidence in the administrative record to support partially discrediting Mr. Gerdes' testimony.

Mr. Gerdes' complacency with respect to seeking treatment for his physical and psychological ailments was an additional valid reason for the ALJ to discredit Mr. Gerdes' testimony that was supported by substantial evidence in the record. To support her conclusion, the ALJ accurately observed that Mr. Gerdes had at least twice discontinued his own mental health medications, had not sought counseling, and had not sought consultations with physicians for his back and neck issues. AR 29; *see also* AR 336, 351. The ALJ further pointed to Mr. Gerdes' testimony that he was waiting to secure Social Security benefits rather than pursue health insurance under the Affordable Care Act. The ALJ further supported her adverse credibility determination on Mr. Gerdes' report to Dr. Zipperman that he left three prior positions, including the position ending on his alleged onset date, for reasons unrelated to his alleged disability.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED**.
2. Defendant's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED**.
3. Judgment shall be entered for Defendant.

The District Court Clerk is directed to enter this Order, enter Judgment as outlined above, provide copies to counsel, and **close this case**.

**DATED** September 26, 2017.

                                       *s/ Rosanna Malouf Peterson*
                                     ROSANNA MALOUF PETERSON
                                         United States District Judge